IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FEDERAL LAND BANK ASSOCIATION OF SOUTHERN ALABAMA, FLCA, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 4:09-cv-03115 |
| CORNELIUS & SALHAB, R.P. CORNELIUS, WILLIAM T. CORNELIUS, and JOSEPH SALHAB, | § § § § § | JURY DEMANDED |
| Defendants. | § § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, ALTERNATIVELY, MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE SUBJECT MATTER, AND, ALTERNATIVELY, <u>MOTION TO REASSIGN CASE</u>**

I.   Nature and Stage of the Proceeding

This is an action brought by the judgment creditor in No. 07-cv-02832, in aid of a judgment entered by this Court in that action, appealed, but not superceded by bond or otherwise, against persons not parties to that judgment. The complaint was filed on September 25, 2009 (Docket Entry No. 1) and assigned to Judge Rosenthal. An order for pretrial conference for January 29, 2010, at 8:45 a.m., was entered. (Docket Entry No. 2). Immediately, without awaiting Defendants' appearance, and without any notice to the named Defendants, Plaintiff sought and obtained reassignment of the case to this Court for the reason that this Court had tried No. 07-cv-02832 and had familiarity with the issues. (Docket Entries Nos. 3 and 5). Significantly, Plaintiff also argued the Texas

turnover statute as grounds for reassigning the case. (Docket Entry No. 3). Defendants appeared and filed a Motion pursuant to Rule 12(b), Fed.R.Civ.P., on October 29, 2009.

Defendants attached affidavits and exhibits to their Motion (Docket Entry No. 10), thus invoking the last sentence of Rule 12(b), Fed.R.Civ.P. Plaintiff has been given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56, Fed.R.Civ.P. Plaintiff has filed both a response and its own cross-motion for summary judgment. (Docket Entries Nos. 11 and 12). This memorandum both responds to Plaintiff's cross-motion for summary judgment and replies in support of Defendants' Motion.

## II.     Statement of the Issues

1. Whether Defendants' Motion for Summary Judgment Should be Granted.

    a. Whether the September 16, 2009 Agreement unambiguously requires dismissal with prejudice of the Bank's claims.

    b. Whether, in any event, the uncontroverted summary judgment evidence shows that the $50,000.00 retainer fees were earned by each of Cornelius & Salhab, and William T. Cornelius.

**Standard of Review**

> This court reviews a grant of summary judgment *de novo.* See *Montgomery v. Brookshire,* 34 F.3d 291, 294 (5th Cir.1994). "The construction of an unambiguous contract is reviewed *de novo,* but while interpretation of an unambiguous contract is a question of law, clear error is the standard of review when a district court uses extrinsic evidence to interpret an ambiguous contract." *Tarrant Distribs., Inc. v. Heublein, Inc.,* 127 F.3d 375, 377 (5th Cir. 1997) (citations omitted). A district court's rulings regarding evidence it will consider in deciding a motion for summary judgment are reviewed for abuse of discretion. *See Richardson v. Oldham,* 12 F.3d 1373, 1376 (5th Cir. 1994).

*Texas Eastern Transmission v. Amerada Hess*, 145 F.3d 737, 741 (5th Cir. 1998).

2

> We review de novo a district court's grant of summary judgment, applying the same standard as the district court. *See Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir.2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citation omitted). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir.1999).

*Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 508-9 (5th Cir. 2003), (quoting *Evans v. City of Bishop*, 238 F.3d 586, 588-89 (5th Cir.2000).

> Selser has not made a sufficient showing to survive summary judgment. In the district court, the appellees submitted affidavits conclusively showing that Southern exercised little, if any, control over PMT's operations. Therefore, even if common law "dominance" may be considered evidence of the "purpose or intent" proscribed by section 55, no genuine issue of material fact exists unless the appellees' affidavits are appropriately countered by Selser. The burden shifted to Selser to establish a genuine issue of material fact, and Selser may not rely on the allegations of his complaint for this purpose. *See Nicholas Acoustics & Specialty Co. v. H & M Construction Co.,* 695 F.2d 839, 844 (5th Cir.1983).

*Selser v. Pacific Motor Trucking Co.*, 770 F.2d 551, 555 (C.A.5 (La.), 1985).

> To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir.1999).

*Salge v. Edna Independent School Dist.*, 320 F.Supp.2d 530, 534 (S.D. Tex., 2003).

> First, does the language of Fed.R.Civ.P. 56(e) require the party who opposes the grant of summary judgment to affirmatively present proof of facts when a motion for summary judgment has been made and supported by proper documentation? Allegations in pleadings normally cannot create a fact issue which will defeat a motion for summary judgment supported by affidavits which negate those allegations. This is the clear intent of

3

> Rule 56(e) which provided in pertinent part that 'when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings. * * *' This rule intends to permit affidavits to pierce the allegations in an opponent's pleadings and to require him to come forward with counter-proof in order to show genuine issues of fact. This is the approach clearly adopted by this circuit. *Scarboro v. Universal C.I.T. Credit Corp.*, 364 F.2d 10 (5th Cir. 1966).

*Keller v. Dravo Corp.*, 441 F.2d 1239, 1245 (C.A.5 (La.), 1971).

2. Whether, if Defendants are not entitled to summary judgment on the merits, express rule, Rule 69, Fed.R.Civ.P.[1], and clear and controlling authority raising fundamental due process concerns, require (i) that Plaintiff proceed according to the Texas post-judgment garnishment procedures to attempt to collect any part of their judgment in No. 07-cv-02832 from the Defendants in this action, (ii) that, to do so, Plaintiff must first seek and obtain its writ of garnishment, and (iii) that the reassignment of this case be rescinded.

**Standard of Review**

> The Texas Turnover Statute is a procedural mechanism that gives Texas courts the power to satisfy a judgment by reaching the assets of a judgment debtor that cannot be attached or levied by ordinary legal process. *In re Hamel*, 180 S.W.3d 226, 228-29 (Tex.App.—San Antonio 2005). Texas courts construing the turnover statute have expressly and consistently held that it may be used to reach only the assets of parties to the judgment, not the assets of non-judgment third parties. *See, e.g., Beaumont Bank*, 806 S.W.2d at 227; *Bay City Plastics, Inc. v. McEntire*, 106 S.W.3d 321, 324 (Tex. App.—Houston 2003); *United Bank Metro v. Plains Overseas Grp.*, 670 S.W.2d 281, 283 (Tex.App.—Houston 1983). Moreover, the turnover statute is a purely procedural mechanism, and it is black-letter Texas law that proceedings pursuant to the turnover statute may not be used to determine the substantive property rights of the judgment debtors or of third parties. *Maiz v. Virani*, 311 F.3d 334, 343-45 (5th Cir.2002) (holding that a district court may not use a turnover proceeding to adjudicate whether a corporation is an individual judgment

---

[1] Rule 69, Fed.R.Civ.P., provides, in pertinent part: "The procedure … in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

debtor's alter ego); Resolution Trust Corp. v. Smith, 53 F.3d 72, 80 (5th Cir.1995) ("A proceeding to determine whether a transaction is fraudulent or otherwise to determine property rights of the parties is improper under the turnover statute, for the statute does not allow for a determination of the substantive rights of involved parties . . . . It is even more clear that a party not even before the court cannot have its rights determined via the turnover proceeding.") (internal quotations and citation omitted); *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 438 (Tex.App.—San Antonio 1994) ("The turnover statute is purely procedural in nature; the statute does not provide for the determination of the substantive rights of the parties."); *Steenland v. Tex. Commerce Bank Nat'l Ass'n*, 648 S.W.2d 387, 389 (Tex.App.—Tyler 1983) (reversing the trial court's use of the turnover statute to make factual findings without a jury trial on whether there was nonexempt excess value in judgment debtor's homestead). Even more specifically, Texas courts have held that a turnover proceeding is not an appropriate vehicle through which to make an alter ego determination and that a separate trial on the merits of that issue is required before the alter ego can be subject to a turnover proceeding. *Maiz*, 311 F.3d at 336 (holding that the Texas Turnover Statute "cannot be utilized to adjudicate the substantive property rights of the two non-judgment debtor corporations in this case without a prior judicial determination which pierces their corporate veils"); *United Bank Metro*, 670 S.W.2d at 283 (noting that the turnover statute is not designed to "permit the [turnover applicant] to skip the trial on the merits in this case with respect to the alter ego issue and declare itself the winner").

*Moreover, these limitations on the reach of the turnover statute—that it applies only to judgment debtors and that it may not be used to adjudicate substantive rights—ultimately spring from due process concerns consistent with those that underlie the requirement of personal jurisdiction; i.e., they prevent "the original trial court [from] reach[ing] out and assum[ing] jurisdiction for trial purposes of potential lawsuits involving third parties." Republic Ins. Co. v. Millard*, 825 S.W.2d 780, 783-84 (Tex.App.—Houston 1992). Courts must respect such limitations on the turnover statute's reach because

> [w]hether a turnover order is enforceable by a contempt order directed to a stranger to the lawsuit is a serious matter that goes to the very heart of due process. A turnover order typically issues without service of citation . . . . [and] effectively shifts the burden to the judgment debtor to account for assets to satisfy a judgment . . . . A turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process. Otherwise, a court could simply order anyone (a bank, an insurance

>company, or the like) alleged to owe money to a judgment debtor to hand over cash on threat of imprisonment.

*Ex parte Swate*, 922 S.W.2d 122, 125 (Tex. 1996) (Gonzalez, J., concurring). Therefore, consistent with due process, a court may not—as the district court attempted to do in this case—use the turnover statute to adjudicate the rights and seize the assets of a third party who might not otherwise be amenable to jurisdiction in that court. *Republic Ins.*, 825 S.W.2d at 783-84.

The district court thus erred as a matter of law by using the turnover proceeding to find that Freetown was Ali Mackie's alter ego and entering the order reverse piercing Freetown's corporate veil. *See Maiz*, 311 F.3d at 343-45; *United Bank Metro*, 670 S.W.2d at 281. Texas law is clear that Appellees must pursue their alter ego proceedings in a separate trial on the merits in the appropriate forum before using the turnover statute to reach Appellants' assets to satisfy the judgment against Ali Mackie. *Maiz*, 311 F.3d at 343-45; *United Bank Metro*, 670 S.W.2d at 281.

*Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 322-324 (5th Cir. 2006) (emphasis added).

### III.   Summary of the Reply and Response Argument

The unambiguous September 16, 2009 Letter Agreement and two controlling Fifth Circuit decisions, *Barron v. Countryman*, 432 F.3d 590 (5th Cir. 2005) and *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317 (5th Cir. 2006), constrain the conclusion that Plaintiff's claims should be summarily dismissed with prejudice.  The Letter Agreement speaks for itself.  The uncontroverted summary judgment evidence and *Barron* demonstrate that the retainer fees received by these lawyers were earned when paid.  If this action is allowed to proceed, *Bollore* dictates that Plaintiff must follow the Texas post-judgment garnishment procedures made applicable to this action by Rule 69, Fed.R.Civ.P., and that the reassignment of this action should be rescinded.  *Barron* and *Bollore* dictate the controlling issues and their outcome, and Plaintiff's attempt to duck these issues with little more than a mere dismissive wave is unavailing.

### IV.   Argument

1. ***Whether Defendants' Motion for Summary Judgment Should be Granted.***

    a. *Whether the September 16, 2009 Agreement unambiguously requires dismissal with prejudice of the Bank's claims.*

    b. *Whether, in any event, the uncontroverted summary judgment evidence shows that the $50,000.00 retainer fees were earned by each of Cornelius & Salhab, and William T. Cornelius.*

    **A.  The September 16, 2009 Agreement is Dispositive**

Plaintiff claims that the September 16, 2009 letter agreement, which it drafted and presented to Defendants for execution, is not an agreement but merely an "acknowledgement by Defendants." However, Plaintiff continues:

> By obtaining that acknowledgment, the Bank satisfied a procedural prerequisite for seeking to recover the $100,000 from Defendants under the Texas Turnover Statute.

Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 11, pp 10-11.

Moreover, the "acknowledgement" was not unilateral – the crux of the agreement is Plaintiff's own acknowledgement, precisely stated as its confirmation, that it is unable to recover from Defendants by ordinary legal process. Plaintiff attempts to justify what it was about in coming up with the September 16, 2009, Letter Agreement in the following language:

> [T]he Garnishment Letter is an acknowledgment by Defendants that the Bank need not go through the exercise of sending the U.S. Marshal to serve Defendants with writs of attachment and/or garnishment that Defendants made it clear they would reject, in order to establish a prerequisite for the Bank's request for statutory (not equitable) relief under the Texas Turnover Statute. The Bank in this action is not violating any promise or obligation in the Garnishment Letter. The Bank did not somehow deprive Defendants of due process. On the contrary, after

> Defendants signed the Garnishment Letter, the Bank filed this action, asserting valid claims against Defendants, and providing this forum in which they can litigate the Bank's claims with all the protections of due process.

Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 11, pp 10-11.

Has the Bank not read *Bollore*?[2] If so, how can the Bank tell this Court with *any* seriousness that they have satisfied procedural prerequisites to proceed against these Defendants under the turnover statute, which "completely bypasses our system of affording due process," *Bollore*, 448 F.3d at 324 (quoting *Ex Parte Swate*, 992 S.W.2d 122, 125 (Tex. 1996) (Gonzalez, J., concurring)), and at the same time argue that what they have maneuvered provides Defendants a "forum in which they can litigate the Bank's claims with all the protections of due process." The argument goes beyond what can be rationally responded to.[3] All Defendants can do is to reiterate that Plaintiff admits the agreement, that Plaintiff in that agreement confirms that it cannot recover through ordinary legal process, and that, therefore, the claim must be dismissed.

### B. The ultimate issue on the merits - whether Defendants earned their fee - is established by uncontroverted summary judgment evidence.

If the agreement is not dispositive, then *Barron v. Countryman* and Defendants uncontroverted summary judgment evidence establish as a matter of law that the retainer fees were earned, and became Defendants' property, when paid. The reasons why the fee is earned when paid is set forth in copious detail in the uncontroverted affidavits supporting Defendants' Motion. The nature of the criminal practice dictates that this be

---

[2] *Bollore, supra,* at Statement of the Issues, 2, Standard of Review, at pp. 4-6.
[3] Defendants can fare no better with Plaintiff's argument that if they prove that the judgment debtor retained control, then the claim will have been properly adjudicated by the Turnover Statute.

8

so, again as clearly laid out in the numerous affidavits filed by Defendants. The undisputed record is thus ripe for analysis under *Barron*.

> Retainer agreements fall into three general categories: (1) classic retainers; (2) security retainers; and (3) advance payment retainers. *In re McDonald Bros.,* 114 B.R. at 996-98; *see* also 1 NORTON BANKR. L. & PRAC. 2d § 25:9 (2005). A classic retainer involves fees paid as consideration for employment of counsel, as opposed to compensation for services rendered. *McDonald Bros.*, 114 B.R. at 998. The classic retainer is earned in its entirety by counsel upon payment, and the debtor relinquishes all interest at remittance. *Id.* A classic retainer, paid prepetition, is outside the estate and the purview of § 330, though it remains subject to disclosure and reasonableness review under § 329 of the Bankruptcy Code. A security retainer involves fees paid to counsel for prospective services. *Id*. at 999. The debtor retains an interest in the funds until services are actually rendered. Pending the rendition of services, the attorney merely "holds" the funds for the debtor. Id. Because the debtor retains an interest in these funds, they become property of the estate at filing subject to §§ 329 and 330. *Id*. at 1000-01. Finally, an advance payment or flat fee retainer involves fees paid as compensation for services to be rendered, but the payment passes entirely to counsel upon remittance, at which time the debtor relinquishes all interest. *Id*. at 1000, 1002. Funds collected as advance payment retainers do not become property of the bankruptcy estate at filing, and, as such, are subject to § 329 only. *See Wootton v. Ravkind* (*In re Dixon*), 143 B.R. 671, 677 (Bkrtcy.N.D.Tex.1992) (internal citations omitted).
> \*\*\*
> The language of the Retainer Agreement and the undisputed operation of Barron's practice demonstrate, however, that the prepetition fees became Barron's property upon receipt in exchange for his prepetition work.
> \*\*\*
> Further, because the retainers at issue in this case were advance payments in nature, they became Barron's property upon remittance.

*Barron*, 432 F.3d at 595-7.

Plaintiff objects to Defendants' thorough affidavits, calling them "extraneous and improper". "The proper method of attacking the evidence is by a motion to strike that contains specific objections. See 11 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE 56.14[4][a], at 56-197 (3d ed. 1999)." *Rushing v. Kansas City S. Ry. Co.*,

185 F.3d 496, 506 (5th Cir., 1999).  Merely labeling affidavits as "extraneous"[4] and "improper"[5] is not sufficient objection under any standard and did not obviate Plaintiff's duty to respond with summary judgment evidence.  Moreover, Plaintiff proffers Defendants' and the other lawyers' affidavits in its own summary judgment materials, (Exhibits 17 & 18), and can thus hardly be heard to complain.  (Docket Entry No. 12, Document 12-19 and 12-20).

*2. Whether, if Defendants are not entitled to summary judgment on the merits, express rule, Rule 69, Fed.R.Civ.P.[6], and clear and controlling authority raising fundamental due process concerns, require (i) that Plaintiff proceed according to the Texas post-judgment garnishment procedures to attempt to collect any part of their judgment in No. 07-cv-02832 from the Defendants in this action, (ii) that, to do so, Plaintiff must first seek and obtain its writ of garnishment, and (iii) that the reassignment of this case be rescinded.*

    **A.  Plaintiff cannot proceed under the Turnover Statute and must obtain a writ of garnishment before proceeding further**

The law is clear.  Rule 69, Fed.R.Civ.P., requires that Plaintiff proceed according to Texas post-judgment garnishment proceedings.  Plaintiff clearly knew as much when it sought and obtained the September 16, 2009 Letter Agreement in which it spelled out the applicable ordinary legal process that it is required to follow as a matter of law.

---

[4] We assume that refers to the fact the affidavits were originally filed in the Alabama criminal proceeding. This is of no import.  The affidavits have been filed in this action, and they stand uncontroverted.
[5] What is improper about summary judgment evidence that addresses the controlling issue as presented in *Barron v. Countryman* of whether these retainer fees were earned by these lawyers when paid?
[6] Rule 69, Fed.R.Civ.P., provides, in pertinent part: "The procedure … in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

If, for some unknown reason, the Bank's clear and unambiguous confirmation that it is unable to recover through this, the ordinary and only available, process, is unenforceable, then the Bank must proceed to attempt to collect through such process. Claims for fraudulent transfer and the imposition of a constructive trust must be brought pursuant to that process and the procedures applicable thereto, not the procedures applicable to the Texas Turnover Statute. Thus, the issue for the Court is clear - either enforce the September 16, 2009 Letter Agreement or require Plaintiff to obtain its writ of garnishment before proceeding further.[7]

---

[7] If, in spite of the fatal procedural defects in the prosecution of Plaintiff's claims, the Court address the merits of Plaintiff's Motion, Defendants show as follows:

1. The Bank admittedly had no interest in proceeds which came into H&H's control from the third party purchaser of the Virginia property. Thus, there can be no constructive trust imposed by the Bank on these proceeds. The Bank's identifiable misapplied loan proceeds went to the mortgagee of the Virginia property, who evidently gave value in exchange. (Docket Entry No. 12, Exhibit 11, Doc. 12-13, at p. 4) End of story.

2. Any fraudulent transfers were accomplished between H&H and Hulse.

What the Bank is apparently saying is, since the corporation (H&H) was the owner of the bank account from which the retainer paid to these Defendants were wired and the corporation obviously received no value for the retention of criminal defense counsel for Mr. Hulse, then H&H's payment to Defendants is a fraudulent conveyance.

In No. 07-cv-02832, there was ample evidence of insiders using corporate loan proceeds for personal expenses, including personal extravagances. Indeed, the Court's memorandum reads as follows:

> In addition, the H&H entities improperly used Loan funds for personal expenditures such as jewelry, apartment rents, airline tickets, Lowe's, hotel bills, groceries, gas, restaurants, entertainment, vehicles and various sundries. Based on the defendants' improper uses of the Loan proceeds, the Court concludes from the evidence and the reasonable inferences to be drawn that the H&H entities and the Hulses intentionally perpetuated a fraud on the Bank, that the defendants misappropriated the funds and income derived, and that they converted the Loan proceeds to their personal use. The Court FINDS and HOLDS that the individual defendants violated the Securities Act, committed acts of conspiracy and violated RICO, breached the Loan Agreements with the Bank, committed fraud and misrepresentation, breached their fiduciary duty to the Bank, committed conversion and misrepresentation. For their conduct, the Court HOLDS that the defendants are jointly and severally liable for damages, attorneys' fees and costs of court.

Case No. 4:07-cv-02832, Docket Entry No. 325, pp. 24-25.

11

*Bollore* also makes it clear that as a matter of due process this Court should not preside over this matter *precisely because* the Court presided over the action in which the judgment was entered. Even if this case had been assigned randomly to this Court, sound discretion would have warranted reassignment *sua sponte*. If not dismissed at the outset, the *ex parte* reassignment of this action to this Court should be, if not must be, rescinded.

## V. Conclusion

WHEREFORE, Defendants request the Court enter an order granting Defendants Motion to Dismiss and denying Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

/s/ Berry Dunbar Bowen
Berry Dunbar Bowen
Fed ID No. 6177
TBN 02721050
3014 Brazos Street
Houston, Texas 77006
Telephone: (713) 521-3525

---

Obviously, there were fraudulent transfers to the Hulses or for their benefit found by the Court. But that's where the fraud occurred and that's where it ends. Are we to have Turnover proceedings against the jewelers, airline companies, resort hotels, and the like, all because H&H was insolvent and received no benefit from the misuse of its funds by insiders? Clearly, the fraudulent transfer act does not reach so far. These transfers were not intended to place assets beyond creditors' reach, they were intended to and apparently did underwrite a lavish lifestyle and satisfy desires for material goods. This Court has already thoroughly remedied the fraudulent transfer of the H&H loan proceeds. This Court has found *alter ego*. It would be totally unjust for the Bank to rely on the corporate distinction. The hotels, airline companies, and jewelers gave value, not to the corporation, H&H, but they are as entitled to rely on the alter ego findings to defend against claims that the actual payor received no equivalent value, as the Bank was to seek and obtain the findings of fraud and *alter ego*. The Bank is a judgment creditor of Hulse, too. If the Bank want a refund of fees he and other insiders caused to be paid from the H&H account, the Bank must step into his shoes, not H&H's.

It would work an injustice to Defendants to allow the Bank to observe the corporate distinction, now that it seeks to collect, rather than obtain its judgment. The fundamental question of value, i.e. of whether *these fees were earned*, cannot be so easily skirted. *See In re Rodriquez,* 895 F.2d 725, 728-9 (5th Cir. 1990) (*Alter ego* available to defend against UPTA claim if supported by record); *see also S.E.C. v. Resource Development Intern., LLC,* 487 F.3d 295 (5th Cir., 2007) (Lawyers for whose engagement transfer was made not implicated in the fraudulent transfer of corporate money by insiders and others). As Plaintiff repeatedly points out, it alleges in this action what it proved in the case against Hulse *et al,* "that H&H Worldwide Financial Services, Inc. made the transfer for the benefit of Paul Hulse, Sr., who is an insider of H&H Worldwide Financial Services, Inc." (Docket Entry No. 11, p. 12, n. 7). This is enough to defeat summary judgment on the fundamental issue of whether Defendants gave value.

                          Facsimile: (713) 521-3575
                          berrybowen@comcast.net
                          ATTORNEY IN CHARGE FOR
                          Cornelius & Salhab, R.P. Cornelius,
                          William T. Cornelius, and Joseph Salhab

Of Counsel:
Robert A. Jones, Esq.
TBN 10941500
2211 Norfolk Street, Suite 600
Houston, TX 77098
Telephone: 713-526-1171

Amy B. Archambault, Esq.
Fed ID No. 670238
TBN 24055110
3014 Brazos Street
Houston, Texas 77006
Telephone: (713) 521-3525
Facsimile: (713) 521-3575

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that a true and correct copy of the foregoing was served to the parties listed below either via electronic means as listed on the Court's ECF noticing system or via United States first-class mail, on December 15, 2009.

M. David Bryant, Jr.
Cox Smith Matthews Incorporated
1201 Elm Street, Suite 3300
Dallas, Texas 75201

                                  /s/ Berry Dunbar Bowen
                                  Berry Dunbar Bowen