**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FEDERAL LAND BANK ASSOCIATION OF SOUTHERN ALABAMA, FLCA, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-3115 |
| CORNELIUS & SALHAB, R.P. CORNELIUS, WILLIAM T. CORNELIUS, and JOSEPH SALHAB, | § § § § § | |
| Defendants. | § | |

**Memorandum and Order**

The plaintiff, Federal Land Bank Association of Southern Alabama, FLCA, (the "Bank") has sued the law firm of Cornelius & Salhab; its partners, William T. Cornelius and Joseph Salhab; and another lawyer, R.H. Cornelius (collectively referred to as "the lawyer defendants"). In this lawsuit, the Bank seeks to recover a $100,000 retainer that the lawyer defendants were paid by a corporation, H & H Worldwide Financial Service, Inc., (H&H) to represent Paul Hulse, Sr., a former officer and principal shareholder of H&H. The representation was in connection with an investigation conducted by the U.S. Attorney's Office in Montgomery, Alabama, into potential criminal fraud charges against Hulse arising out of allegedly fraudulent statements to the Bank. The criminal investigation, and this lawsuit, are both related to a prior lawsuit Federal Land Bank filed against H&H, related corporations, Hulse and members of his family, as well as other defendants, alleging fraud in connection with loans the Bank had made to H&H in 2005. In 2009, the court presiding over that case entered a final judgment after a six-day trial, awarding the Bank over $125

million in damages and a constructive trust over certain property. That judgment remains unpaid.

In the present case, the Bank alleges that it is entitled to receive the $100,000 that was paid by its judgment debtor, H&H, to the lawyer defendants. The Bank seeks avoidance of the payment under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE § 24.001 *et seq.*, a constructive trust, and garnishment under the Texas Turnover Statute, *id.* § 31.002. (Docket Entry No. 1).

After some initial skirmishing over where the case should proceed, the lawyer defendants moved to dismiss, (Docket Entry No. 10),[1] and the Bank responded and moved for summary judgment, (Docket Entry No. 11, 12). At a hearing, the parties agreed that the most critical issue was whether the payment of the $100,000 by H&H was a fraudulent transfer. (Docket Entry No. 16). The Bank filed a supplemental brief in support of its motion for summary judgment, and the lawyer defendants supplemented their motion to dismiss, acknowledging that it should be treated as a motion for summary judgment. (Docket Entries No. 22, 23).

Based on the pleadings, the summary judgment evidence, and the applicable law, this court denies the motion for summary judgment filed by the Bank and grants the motion for summary judgment filed by the lawyer defendants. No later than September 26, 2010, the parties are to submit a statement identifying any remaining issues and a proposed schedule for resolving them, or submit a proposed final judgment.

The reasons for these rulings are explained below.

---

[1] The lawyer defendants also moved to reassign the case. That aspect of Docket Entry No. 10 was granted when the case was transferred back to this court.

**I.      Background**

In September 2007, the Bank sued H&H, Hulse, his wife (Marie Hulse), his son (Paul Hulse, Jr.), and others. (Docket Entry No. 12-3). The complaint in that case, Civil Action No. No. 4:07-2832, alleged that the defendants conspired to defraud the Bank in connection with applications for loans to H&H. Hulse and his wife owned H&H and Hulse served as its president during the relevant period. The Bank alleged that the other corporate entities sued were alter egos of H&H and its owners, Hulse and his wife. The Bank filed a similar suit in state court in Kentucky, focusing on the financial transactions between the Bank and H&H and the Hulses. In the Kentucky case, the court awarded the Bank over $42 million in damages.

In the 2007 case filed in federal court in Houston, Civil Action No. 4:07-2832, the Bank alleged fraud in loans made to H&H for real estate acquisitions, in violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, RICO, 18 U.S.C. § 1961 *et seq.*, and Texas common law. Hulse invoked his Fifth Amendment right and refused to answer questions in the bench trial. The trial court held that the conduct of the individual defendants, including Hulse, was the result of "calculated and intentional misrepresentations." (Docket Entry No. 12-4 at 14). The court also found that Hulse and the other defendants knowingly engaged in a conspiracy to defraud the Bank in the loan transactions and created a "criminal enterprise in violation of the RICO statute for the purpose of defrauding the Bank." (*Id.* at 20). The court held that the "Hulses and H&H engaged in innumerable transfers of Loan proceeds for their personal benefit, the purpose and effect of which hindered and delayed obtaining true knowledge on the part of the Bank, and to defraud the Bank." (*Id.* at 24). Finally, the court held that the Hulses had created and used corporate entities of H&H that were simply alter egos, to

> further perpetuate their fraudulent scheme against the Bank. Loan

3

> proceeds were funneled in and through these entities to make purchases of real estate and equipment to even though appropriate collateralization of the Loan was not accomplished. Income derived from the entities and the real estate did not inure to the benefit of the Bank but to the Hulses. . . .
>
> In addition, the H&H entities improperly used Loan funds for personal expenditures such as jewelry, apartment rents, airline tickets, Lowe's, hotel bills, groceries, gas, restaurants, entertainment, vehicles and various sundries. Based on the defendants' improper use of the Loan proceeds, the Court concludes . . . that the H&H entities and the Hulses intentionally perpetuated a fraud on the Bank, that the defendants misappropriated the funds and income derived, and that they converted the Loan proceeds to their personal use.

(*Id.* at 24–25). The court held that the individual defendants had violated the federal securities statute and RICO, committed fraud, and committed conversion and misrepresentation. (*Id.* at 25). The Hulses had used loan proceeds to pay off mortgages on land not mortgaged to the Bank and to pay off mortgages on their homes in Texas. Millions of dollars were paid to Hulse family members, including for personal loans, home equity pay-offs, apartment rentals, proceeds to acquire a corporate office, cars and motorcycles, and luxury items. The Hulses operated H&H and the other corporate entities as a single business enterprise. Accordingly, each defendant was jointly and severally liable for the damages, fees, and costs. (*Id.*). The final judgment entered on April 23, 2009, (Docket Entry No. 12-5), awarded treble damages of $125,647.710.67 against the defendants H&H; Hulse, his wife, and son; and two other individuals, jointly and severally, as well as fees, costs, and interest. The court also imposed a constructive trust in favor of the Bank on "any real or personal property in the possession" of H&H Worldwide Financial Service, Inc. or Paul Hulse or other members of his family, "purchased with proceeds of the loans from [the Bank] to H&H Worldwide Financial Service, Inc. or otherwise traceable to the Bank's funds, including, but not limited to, vehicles, artworks, and furs." (*Id.*). An order enforcing the constructive trust was entered in June 2009. (Civ. A. No. 4:07-2832, Docket Entry No. 373).

On October 23, 2007, H&H had paid the lawyer defendants two $50,000 retainers to represent Hulse in a criminal investigation into his role in defrauding Federal Land Bank. The investigation was conducted by the United States Attorney's office in the Middle District of Alabama. (Docket Entries No. 10-5, 12-16). The $100,000 paid to the lawyer defendants was part of the proceeds from the sale of a Dinwiddie County, Virginia, property owned by H&H that had been financed by a loan from the Bank. (*See* Docket Entry No. 12-15). The investigation against Hulse ultimately ended without any charges. (Docket Entry No. 10-5). Federal Land Bank filed this suit to avoid the transfer of the fees on September, 25, 2009. (Docket Entry No. 1).

## II. Analysis

Although the parties have indicated that the most pressing issue is the fraudulent transfer issue, the motions raise other issues that are also analyzed below.

### A. Failure to Join a Necessary Party

The lawyer defendants argue that this court must dismiss because Hulse is a necessary party under FED. R. CIV. P. 19. The lawyer defendants style the motion as one for dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), but the appropriate rule appears to be Rule 12(b)(7), which allows dismissal for "failure to join a party under Rule 19."

Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (footnotes omitted). A court must first determine if a person should be joined to the lawsuit under Rule 19(a). If so, joinder should result. But if such joinder would destroy the court's jurisdiction, the court must determine under Rule 19(b) whether that person is indispensable. If so,

5

the court must dismiss the litigation. If the person is not indispensable, the case may continue without joinder. *Id.* Rule 19(b) lists four factors to be considered: (1) the extent to which proceeding without the absent person would prejudice either the absent party or the parties to the lawsuit; (2) whether a judgment can be structured with protective provisions that would lessen the potential prejudice; (3) whether a judgment in the absence of the necessary party will be adequate; and (4) whether the plaintiff has an adequate remedy if the lawsuit is dismissed.

The lawyer defendants argue that Hulse is a necessary party and because Hulse and the Bank are both Alabama residents, dismissal is required. *See Stiftung v. Plains Marketing, L.P.*, 603 F.3d 295, 297 (5th Cir. 2010) ("The diversity statute requires complete diversity of citizenship." (quotations and citations omitted)). Even assuming, without deciding, that Hulse is a necessary party under Rule 19, dismissal is not automatic if adding Hulse would destroy diversity. Rather, the four factors in subsection (b) must be analyzed. The lawyer defendants have not briefed those factors or presented any of the information this court needs to determine if dismissal should result. *See Pickle v. Int'l Oilfield Divers, Inc.*, 791 F.2d 1237, 1242 (5th Cir. 1986) (citing *Kimball v. Fla. Bar*, 537 F.2d 1305, 1307 (5th Cir. 1976) (declining to dismiss under Rule 19 without briefing on subsection (b)'s factors)); *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, No. 94 C 3303, 1996 WL 435180, at *7 n.3 (N.D. Ill. 1996) (noting that the parties' failure to brief the Rule 19(b) factors made it difficult to determine whether dismissal was appropriate); *Calgon Corp. v. Nalco Chem. Co.*, 726 F. Supp. 983, 990 (D. Del. 1989) ("None of [the Rule 19] issues were adequately addressed on the present motion, and the Court is reluctant to guess at them here."). The motion to dismiss under Rule 12(b)(7) is denied.

    **B.**    **The Summary Judgment Motion**s

        **1.**    **The Legal Standard**

Although the lawyer defendants style their motion to dismiss for failure to state a claim as one under Rule 12(b)(6), they acknowledge that it relies on matters outside the pleadings and is "effectively a motion for summary judgment." (Docket Entry No. 23, at 1 n.1). When a party submits materials outside the pleadings in connection with a motion to dismiss, the court must convert the motion into a summary judgment motion under Rule 56 if the court chooses to consider those materials. *See Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*, No. H-05-1865, 2006 WL 1875959, at *4 (S.D. Tex. July 5, 2006). The court has discretion to accept and consider the materials but is not required to do so. *Id.* (citing *Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir. 1999); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir. 1988)). In this case, the Bank has moved for summary judgment on the TUFTA issue and the lawyer defendants have asked this court to consider their motion to dismiss as a summary judgment motion. The court agrees that the lawyer defendants' motion should be treated as one for summary judgment under Rule 56.

There is no need to give additional notice that the motion is treated as one for summary judgment. The key to whether the court must give such notice is whether the losing party has been given adequate notice and an opportunity to supplement the record before summary judgment is granted. *See Clark v. Tarrant County, Tex.*, 798 F.2d 736, 745–46 (5th Cir. 1986). When the lawyer defendants first filed their motion to dismiss, they included an affidavit with six exhibits and referred to those exhibits in making their argument. The lawyer defendants later explicitly recognized that their motion was in fact one for summary judgment. The Bank has had ample notice that the issues are presented as cross-motions for summary judgment. *See Tri-Gen Inc. v. Int'l Union of Operating Eng'rs*, 433 F.3d 1024, 1029 (7th Cir. 2006) ("Adequate notice is provided when the moving party frames its motion in the alternative as one for summary judgment." (citations omitted)); *see also Ball*

7

*v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (finding no error in district court's failure to give notice of treatment of a motion to dismiss as a motion for summary judgment because "the district court did not act sua sponte in converting the motion," the defendants moved for summary judgment in the alternative, and the plaintiffs responded to the summary judgment motion by submitting materials outside the pleadings); *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996) (when a motion to dismiss sought summary judgment in the alternative, the plaintiff was on notice that the court could rule on the motion as one for summary judgment), *disapproved of on other grounds by Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir. 2000)); *Madewell v. Downs*, 68 F.3d 1030, 1048 (8th Cir. 1995) ("Madewell had constructive notice that the right of all defendants to judgment as a matter of law was at issue. That constructive notice came from the DEA defendants' alternative designation of their motion as a motion for summary judgment, and Madewell's own submission of materials outside of the pleadings for consideration by the court . . . ." (internal citation omitted)).

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402

F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### 2. TUFTA

Federal Land Bank moves for summary judgment on the basis that the $100,000 payment by H&H to the lawyer defendants was a fraudulent transfer under TUFTA. The lawyer defendants cross-move for summary judgment that the transfer was not fraudulent.

TUFTA allows a creditor to avoid fraudulent transfers. Section 24.005(a) provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

9

>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> > (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> > (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE § 24.005(a). Under section 24.006(a),

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Id.* § 24.006(a). The motion and cross-motion both turn on whether, as a matter of law, the judgment debtor, H&H, received value for the $100,000 paid to the lawyer defendants to represent Hulse in the criminal investigation. That in turn raises two issues: the value of the lawyer defendants' legal services; and whether those services benefitted H&H.

As to the first issue, the summary judgment evidence provided by the lawyer defendants establishes that they did provide value for the two $50,000 retainers that were paid, a point that Federal Land Bank has not contested. The relevant portion of the contract reads:

### PRE-INDICTMENT FEE

> A $100,000 payment is due upon signing of this document and represents a pre-indictment fee. If the attorneys are successful in preventing an indictment, this pre-indictment fee, plus all expenses and court time, will constitute the entire fee.

(Docket Entry No. 10-7). The fee was a "classic retainer[,] paid as consideration for employment of counsel, as opposed to compensation for services rendered. The classic retainer is earned in its

10

entirety by counsel upon payment, and the debtor relinquishes all interest at remittance." *Barron v. Countryman*, 432 F.3d 590, 597 (5th Cir. 2005) (citations omitted); *see also In re Armstrong*, 234 B.R. 899, 907–08 (Bankr. E.D. Ark. 1999) (holding that a retainer fee was "for value" under federal bankruptcy law when the debtor faced criminal charges related to a Ponzi scheme). In addition, the Corneliuses estimated that they spent a combined 200 hours on the investigation. (*See* Docket Entries No. 10-4, 10-5). The record establishes that, as a matter of law, there was value provided for the payment.

As to the second issue, Federal Land Bank argues that if there was value provided for the $100,000 payment by H&H, it was provided to Hulse, not H&H. The argument is based on the Fifth Circuit's rule that legal fees that benefit only a third party are of no value to the debtor. *See S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301–02 (5th Cir. 2007). The lawyer defendants respond that it is sufficient if Hulse received value because he is H&H's alter ego. The lawyer defendants argue that collateral estoppel and judicial estoppel preclude the Bank from arguing that Hulse is not H&H's alter ego, because the judgment in the antecedent case held that they were alter egos and jointly and severally liable for the judgment.

The question is whether an alto ego of a judgment debtor is a "debtor" under TUFTA. More precisely, the question is whether payment by a corporate judgment debtor for legal services provided to a past officer and owner of the corporation, when the corporation and the officer have been found to be alter egos, and when the legal services arise from the officer's alleged use of the alter-ego corporation to commit the fraud that gave rise to the judgment debt, is a fraudulent transfer under TUFTA. The parties have cited no case that specifically addresses this question.

TUFTA defines "debtor" as "a person who is liable on a claim." TEX. BUS. & COM. CODE § 24.002(6). Similarly, it defines a debt as "liability on a claim." *Id.* § 24.002(5). These definitions

are the same as in the Uniform Fraudulent Transfer Act. *Compare id.* § 24.002 (5) & (6) *with* UNIF. FRAUDULENT TRANSFER ACT. § 1 (5) & (6). TUFTA directs courts to interpret the act in the light of its purpose to create uniform law. TEX. BUS. & COM. CODE § 24.012. As a result, cases interpreting not only TUFTA but also other states' enactments of the Uniform Fraudulent Transfer Act are also pertinent. *See Resource Development*, 487 F.3d at 301 n.5 (interpreting TUFTA in reliance on another Fifth Circuit case interpreting the same provision of Washington's enactment of the uniform act). Fraudulent transfer cases under the federal bankruptcy code are also relevant, because TUFTA's definition of "debt" derives from § 101(11) of the federal Bankruptcy Code. *See* UNIF. FRAUDULENT TRANSFER ACT. § 1, cmt. 5; *see also* Phillip I. Blumberg, *Intragroup (Upstream, Cross-Stream, and Downstream) Guarantees Under the Uniform Fraudulent Transfer Act*, 9 CARDOZO L. REV. 685, 695–96 (1987) (UFTA was an effort to harmonize state law with the Bankruptcy Code); *cf. In re Image Worldwide, Ltd.*, 139 F.3d 574, 577 (7th Cir. 1988) (using federal bankruptcy law to define a UFTA term that was derived from the Bankruptcy Code).

The lawyer defendants rely on a decision in a federal bankruptcy case from the Eleventh Circuit, *In re Rodriguez*, 895 F.2d 725 (11th Cir. 1990). In that case, a bankruptcy trustee sought to avoid transfers made by the debtor to a creditor of a separate corporate entity. *Id.* at 726–27. The court, however, did not specifically analyze whether payments that benefitted an alter ego could be for the benefit of the debtor. *Id.* at 728–28. Instead, it concluded that the corporations were not alter egos. *Id.* Closer on point is a bankruptcy decision from the Southern District of Florida, *In re Leneve*, 341 B.R. 53 (Bktrcy. S.D. Fla. 2006). In that case, the debtor made payments to a third party to satisfy a debt owed by a corporation that the court held was the debtor's alter ego. *Id.* at 62–63. The trustee argued that because the debtor and the corporation were distinct entities, value to the corporation was not value to the debtor. *Id.* at 63. The court rejected that argument, noting

12

that it "presuppose[d] an essential element: namely, a division between the entity which receives the 'value' from the creditor and the one which subsequently 'transfers' the corresponding payment." *Id.* Acknowledging that the situation was "rather unique," the court held that the trustee could not pursue the assets of the alter ego entities on the theory that they were the same as the debtor while avoiding transfers that benefitted the entities on the theory that they were separate.

The *Leneve* court's approach is consistent with Texas law. "The corporate form normally insulates shareholders, officer and directors from liability for corporate obligations," but when a "corporation is considered the alter ego of the individual . . . the two are treated as one." *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1987)[2]; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 199 (Tex. 1995) ("In the corporate context, we will disregard the corporate fiction under the 'alter ego' theory when the corporation is organized and operated as a mere tool or business conduit of another corporation." (citations and quotations omitted)); *Ex parte Chambers*, 898 S.W.2d 257, 262 (Tex. 1995) (Enoch, J., concurring) (quotations and citations omitted). Under Texas law, a corporation's alter ego is one with the corporation. The Texas approach is consistent the general rule. *See* 1 WILLIAM MEADE FLETCHER *ET AL.*, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.10 ("The alter ego theory applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased.").

As the *Leneve* court explained, treating a corporate debtor and its alter ego as one is especially appropriate circumstances such as those present here, in which the creditor has already pierced the corporate veil to get to the individual's assets. In its March 19, 2009, opinion, the court considered whether it was appropriate to pierce the veil between Hulse, H&H, and other related

---

[2] The Texas legislature has since limited this principle as applied to contractual obligations. *See Willis v. Donnelly*, 199 S.W.3d 262, 272–74 (Tex. 2006).

entities.  In deciding to pierce the veil, it relied on the Hulses' use of nearly $1.5 million to pay off mortgages in Virginia and on their homes in Texas.  Another $5.5 million went toward "loans" to the Hulses.  The court imposed joint and several liability on the Hulses and all the corporate entities. (*See* Docket Entry No. 12-5, ¶ 6).  The court's conclusion in Civ. A. No. 4:07-cv-2832 that Hulse and other members of his family, H&H, and the corporate entities they created should be treated as one entity was essential to the judgment and is preclusive. *See Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004) ("Collateral estoppel precludes a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action.").

In addition, the record shows that H&H benefitted from the legal representation it paid for Hulse to receive.  A corporation may benefit from the legal fees paid to secure representation of an officer (or former officer) in a criminal matter because the individual officer's exposure to criminal liability is often intertwined with the corporation's exposure.  "[I]t is the general rule today that a corporation may be liable criminally for crimes that its agents are capable of committing on its behalf."  FLETCHER, *supra*, § 4942 (collecting cases); *see also* JAMES D. COX & THOMAS LEE HAZEN, CORPORATIONS § 8.13; V.S. Khanna, *Corporate Criminal Liability: What Purpose Does It Serve?*, 109 HARV. L. REV. 1477, 1489 (1996) ("Corporate liability in the United States is based on the imputation of agents' conduct to a corporation, usually through the application of the doctrine of respondeat superior.").  Paying for representation of an employee gives value to the corporation—and its creditors—when it tends to protect the corporation from criminal liability based on the employee's exposure.

Relying on this rationale, several courts have concluded that corporate payment of employees' attorney fees are for value of to the corporation. For example, in *In re Terry Manufacturing Co.*, creditors sued under Georgia's enactment of the UFTA to avoid transfers of nearly $500,000 in legal fees spent defending a corporation and its officers and directors. Nos. 03-32063-WRS, 03-32213-WRS, 2:07-CV-620-WKW, 2008 WL 4493240, at *2, *6 (M.D. Ala. Sept. 30, 2008). The employee responsible for the wrongdoing was the corporation's vice-president, chief financial officer, and 49-percent owner who had participated in a conspiracy with one of the company's suppliers to inflate invoices. The corporation retained a lawyer to represent it and the employee. *Id.*[3] The district court rejected the bankruptcy court's conclusion that the legal fees were not in the corporation's interest because the lawyer's primary efforts were to save the employee from criminal conviction. *Id.* at *8. The district court was clear that it was "not [the corporation's] actual liability but its *potential* liability" that mattered because the relevant inquiry was the value to the corporation at the time of payment. *Id.* (emphasis in original); *see also id.* ("Whether [the corporation] was, at any point, liable . . . is not necessary for this court to decide. The relevant question is instead whether [it] *could* have faced liability . . . ."). Because the corporation could be criminally liable for the employee's actions, defending the employee from criminal liability was in the corporation's financial interest. *Id.* at *12–13; *see also In re Trauger*, 105 B.R. 120, 122–23 (Bankr. S.D. Fla. 1989) (holding that retaining lawyers for employees and their spouses was "not a gratuitous selfless act of generosity" because "a benefit to these litigants represented a benefit to the debtor"). Similarly, in this case, H&H received value for the $100,000 it paid the lawyer

---

[3] Like TUFTA, Georgia's law requires the debtor to "receiv[e] equivalent value"; in fact, the whole section is identical. *Compare* GA. CODE § 18-2-74 *with* TEX. BUS. & COM. CODE § 24.005; *see also Resource Development*, 487 F.3d at 301 n.5 (relying on a case interpreting Washington's identical enactment of the UFTA to interpret TUFTA).

15

defendants to represent Hulse in the U.S. Attorney's investigation into his conduct while he was an officer and owner, because both H&H and Hulse faced potential criminal liability in that investigation.

The Bank's motion for summary judgment based on TUFTA is denied, and the lawyer defendant's motion is granted, based on the conclusion that H&H's payment of the $100,000 retainer to obtain representation for Hulse in the criminal investigation was "for value."

### 3. The "Agreement"

The lawyer defendants also argue that an agreement between it and the Bank bars this suit. The asserted "agreement" is a letter dated September 15, 2009 from the Bank to Cornelius & Salhab as part of its effort to set up a claim under the Texas turnover statute. (Docket Entry No. 10-3). The relevant part of the letter reads as follows:

> Based upon our previous discussions, we understand that you dispute the Bank's claims and refuse to turn over the money paid to you by H&H. Accordingly, this letter will confirm that: (1) the U.S. Marshal need not serve formal writs of execution or garnishment on you or your law firm to establish that you will decline to turn over the $100,000 sought by the Bank; and (2) the Bank is therefore unable to recover such property from you by ordinary legal process.
>
> If the above paragraph confirms our mutual understanding, please sign in the spaces below and return this letter to David Bryant or me by the close of business this Friday, September 18.

(*Id.*). As the Bank points out, the language simply tracks the language of the Texas turnover statute, which provides: "A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property . . . that cannot readily be attached or levied on by ordinary legal process." TEX. CIV. PRAC. & REM. CODE. § 31.002(a)(1). As numerous courts have held, this "ordinary legal process" is a writ, which the letter references. *See, e.g.*, 165 S.W.3d 715, 722 (Tex. App.—Dallas 2004, no pet.). The letter is clearly not an agreement not to

sue, as the lawyer defendants claim, but instead an attempt to satisfy a prerequisite to a turnover action. *See Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 669 (Tex App.—Dallas 2010) (treating inability to attach as an element of a turnover action). The lawyer defendants cannot obtain a summary judgment based on the letter "agreement."

### 4. The Turnover Statute

The Bank seeks summary judgment that it is entitled to the $100,000 under the Texas turnover statute, section 31.002 of the Texas Civil Practice & Remedies Code. "The Texas Turnover Statute is a procedural mechanism that gives Texas courts the power to satisfy a judgment by reaching the assets of a judgment debtor that cannot be attached or levied by ordinary legal process. Texas courts construing the turnover statute have expressly and consistently held that it may be used to reach only the assets of parties to the judgment, not the assets of non-judgment third parties." *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006) (citations omitted). Courts cannot use turnover proceedings to determine whether a transaction is fraudulent. *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 80 (5th Cir. 1995).

The Bank relies on cases in which courts ordered third parties to turn over property that belonged to the judgment debtor. *Dale v. Fin. Am. Corp.,* 929 S.W.2d 495 (Tex. App.—Forth Worth 1996, writ denied); *Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.,* 703 S.W.2d 345 (Tex. App.—San Antonio 1985, no writ) (same); *Detox Indus., Inc. v. Gullett,* 770 S.W.2d 954 (Tex. App.—Houston [1st Dist.] 1989, no writ). Those cases did not require the courts to determine whether the property in fact belonged to the judgment creditor. Instead, in those cases, the rights to the property were clearly established. The courts merely ordered the third party who held the property to turn it over to the judgment creditor. *See Dale*, 929 S.W.2d at 499 (creditors "traced the assets . . . back to [the debtor] and . . . demonstrate[d] that the items were subject to [the debtor's]

17

control); *Norsul Oil*, 703 S.W.2d at 349 (judgment creditor could recover stock shares owned by debtor, even though a third party actually held the shares); *Detox Indus.*, 770 S.W.2d at 958 (denying relief because the third-party did not have possession of the property). The Bank cannot prevail on its summary judgment motion based on the turnover statute.

### 5. Constructive Trust

The parties have also cross moved for summary judgment on the Bank's claim for a constructive trust. Under Texas law, "[w]hen property subject to a constructive trust is transferred, the recipient of the property takes title to the property subject to the trust if (1) the recipient does not give consideration for the property or (2) the recipient has notice of the existence of the trust at the time of the transfer." *See, e.g.*, *Cote v. Texcan Ventures II*, 271 S.W.3d 450, 453 (Tex. App.—Dallas 2008, no writ). In its complaint, the Bank alleges that it is entitled to a constructive trust because the lawyer defendants knew that the fee was paid by H&H when its assets were subject to a constructive trust in favor of the Bank. (Docket Entry No. 1, ¶ 15–17).

"A party seeking to impose a constructive trust has the initial burden of tracing funds to the specific property sought to be recovered. Once that burden is met, the entire property will be treated as subject to the trust, except in so far as the trustee may be able to distinguish and separate that which is his own." *Wilz. v. Flournoy*, 228 S.W.3d 674, 676 (Tex. 2007) (per curiam) (citations, quotations, alterations, and emphasis removed). To meet its burden, the Bank must show that the funds received by the lawyer defendants were subject to the constructive trust imposed by the district court's judgment in Civil Action No. 4:07-cv-2832.

The Bank presents three pieces of evidence that is says show the funds are traceable to the property placed under constructive trust in Civil Action No. 4:07-cv-2832: a judgment entered on April 23, 2009, granting a constructive trust on "any real or personal property in the possession of

H&H Worldwide Financial Service, Inc. . . . that was purchased with proceeds of the loans from [Federal Land Bank] to H&H Worldwide Financial Service, Inc. or otherwise traceable to the Bank's funds, including, but not limited to, vehicles, artworks, and furs," (Docket Entry No. 12-5, ¶ 6); documents showing sale proceeds of $599,306.28 from H&H's sale of property in Dinwiddie County, Virginia, (Docket Entry No. 12-2, ¶ 5; Docket Entry No. 12-15)); Docket Entry No. 12-15); and a bank statement showing a $100,000 transfer from H&H's bank account to Cornelius & Salhab on October 23, 2007, (Docket Entry No. 12-16).

This evidence does not entitle the Bank to summary judgment. The April 23, 2009 judgment imposed a constructive trust only as to property "in possession of" a list of parties. The lawyer defendants are not on the list. The transfer to the lawyer defendants was on October 23, 2007, eighteen months before the judgment and constructive trust. Because the money paid to the lawyer defendants was in their possession, not H&H's, at the time of the judgment, the funds are beyond the scope of the constructive trust. The Bank's motion for summary judgment on the basis of constructive trust is denied and the lawyer defendants' motion is granted.

**III.    Conclusion**

The Bank's motion for summary judgment is denied; the lawyer defendants' motion for summary judgment is granted. No later than September 26, 2010, the parties are to submit a statement identifying any remaining issues and a proposed schedule for resolving them, or submit a proposed final judgment.

SIGNED on September 9, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

19